IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE BLACK HERITAGE SOCIETY, *et al.*, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-07-0052 |
| THE CITY OF HOUSTON, | § § § | |
| Defendant. | § § | |

**MEMORANDUM AND ORDER**

The plaintiffs, the Black Heritage Society (BHS) and its president, Ovide Duncantell, filed this suit on January 11, 2007 to challenge the constitutionality of the City of Houston's 2005 parade ordinance. This court issued a temporary restraining order requiring the City to issue a parade permit to the BHS for 2:00 p.m. on January 15, 2007, Martin Luther King, Jr. Day, and enjoining the City from enforcing certain provisions of the 2005 parade ordinance. In a December 4, 2007 Memorandum and Opinion, this court held that several of the provisions in the 2007 amended version of the City's parade ordinance were unconstitutional. The City subsequently agreed to, and did, amend these provisions.

The plaintiffs argue that they are prevailing parties entitled to recover reasonable attorneys' fees. The City does not dispute that the plaintiffs are entitled to recover some fees but asserts that the amount sought is excessive in relation to the success the plaintiffs achieved and that some of the hours and expenses claimed are unreasonable.

Based on a careful review of the record,[1] the motion, response, and reply, and the applicable law, this court finds that the plaintiffs are entitled to recover 75% of their requested fees, excluding time spent for certain travel entries, and all of their costs and expenses excluding certain travel expenses. The reasons are set out below.

I.    Background

The plaintiffs are one of two rival groups that annually apply for a City of Houston permit to hold a parade at the same time and place on Martin Luther King, Jr. Day. Both groups want to hold their parade in downtown Houston on the morning of Martin Luther King, Jr. Day. The City has had to devise a constitutional method to select which group will hold its parade on that date, place, and time.

In 2005, the City enacted a revised ordinance providing in part that no more than one parade may take place on the same day in downtown Houston. The ordinance stated that if more than one group applied for the same date, time, and place for a parade permit, an arbitrator would pick the group to receive the permit based on enumerated factors, including constitutionally dubious factors related to the content of the expressive activity. The ordinance also required parade organizers to obtain certain kinds and amounts of insurance. (Docket Entry No. 13). These provisions were instituted for the first time in 2006 with

---

[1] In support of their motion for attorneys' fees, the plaintiffs submitted a declaration from another civil rights attorney supporting their motion for fees, (Docket Entry No. 52, Ex. A–1); a declaration from a civil rights attorney involved in this suit supporting the motion (Docket Entry No. 52, Ex. A–2); time and expenditure records for the attorneys, paralegal, and legal assistant (Docket Entry No. 52, Ex. B–1); a report from the State Bar of Texas detailing average hourly attorney rates by experience and region (Docket Entry No. 52, Ex. B–2); and resumes from the attorneys, paralegal, and legal assistant who worked on the case. (Docket Entry No. 52, Ex. B–3).

respect to the 2007 MLK Day parade permits requested by the competing groups. The arbitrator chose the rival group, not the plaintiffs. On January 11, 2007, this court granted the plaintiffs' application for a temporary restraining order, instructing the City to issue a parade permit to the BHS for 2:00 p.m. on January 15, 2007 and enjoining the City from enforcing or administering provisions in the 2005 ordinance that raised significant constitutional questions. (Docket Entry No. 56 at 2).

In response to the temporary restraining order, this suit, and an earlier suit challenging the 2005 ordinance, the City revised the ordinance in June 2007. The City eliminated the arbitration provision and instead began using a content-neutral means to resolve competing applications for permits for parades to be held at the same date, time, and place. (*Id.* at 2–3). The City also added a new fee-waiver provision for indigent applicants.

On July 13, 2007, the plaintiffs challenged the revised ordinance. The plaintiffs did not challenge the content-neutral approach for deciding between two competing parade-permit applicants. The plaintiffs did challenge a number of other provisions in the revised 2007 ordinance, including:

- the definition of "parade" (§ 45-231);

- the provision stating that no more than one parade may take place on the same day in downtown Houston (§ 45-235(i)(1));

- the $250 permit application fee (§ 45-235(e));

- the provision for waiving the $250 permit fee for a "non-revenue-generating" parade if the applicant is unable to pay (§ 45-235(f));

- the provision requiring a permit applicant for a weekend or holiday parade held downtown to pay $1,000 for every intersection above 15 blocks up to the (unchallenged) limit of 25 blocks (§ 45-232(f));

- the provision requiring a permit applicant to provide proof of insurance coverage if the parade is above a certain size and includes animals, floats, or certain kinds of vehicles (§ 45-242);

- the provision requiring a permit applicant to sign an agreement to indemnify the City against certain harms (§ 45-236(8)); and

- the provisions that grant a City official discretion to deny or revoke a permit (§§ 45-238, 240).

On December 4, 2007, this court held that, with the exception of the provision for indigency waivers of the permit fee and the related provision dealing with revoking a permit if a parade identified as "non-revenue-generating" subsequently lost that status, the challenged provisions of the revised 2007 Houston parade ordinance were facially constitutional and constitutional as applied to the plaintiffs. This court found that the indigency-waiver provision for the permit fee and the related provision requiring the City to revoke a permit should a parade designated as a non-revenue-generating parade later be identified as revenue-generating "raised significant constitutional concerns." The City stated that it intended to waive the permit application fee for the plaintiffs. This court enjoined the City from revoking a permit if the plaintiffs received one and later received financial support, donations, or sponsorships for their parade. This court otherwise denied the plaintiffs' motion for a permanent injunction and declaratory relief.

The City amended the indigency-fee-waiver provisions of the parade ordinance in January 2008. (Docket Entry No. 53 at 2). BHS announced in a status conference before the

court that it did not intend to challenge the amended ordinance. (Docket Entry No. 48). On March 21, 2008, this court dismissed the case due to the resolution of the controversy resulting from the City's 2007 and 2008 amendments. (Docket Entry No. 51).

## II.     Prevailing Party Status

### A.     The Legal Standard

A plaintiff is generally entitled to recover attorney's fees in a civil rights suit if the plaintiff is a "prevailing party." *See Houston Chronicle Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 623 (5th Cir. 2007); *Iranian Students Ass'n v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1979), *Criterion Club of Albany v. Bd. of Comm'rs*, 594 F.2d 118, 120 (5th Cir. 1979). To qualify as a prevailing party, "the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker v. City of Mesquite,* 313 F.3d 246, 249 (5th Cir. 2002). "The touchstone of the prevailing party inquiry. . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 127 S. Ct. 2188, 2194 (2007) (quoting *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–793 (1989)). In *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res.*, 121 S. Ct. 1835 (2001), the Supreme Court concluded that "prevailing party" did not include "a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the

5

defendant's conduct." *Id*. at 1838. "Although an enforceable judgment on the merits and a court-ordered consent decree have sufficient judicial imprimatur, these examples are not exclusive." *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008) (additional citations omitted) (citing *Buckhannon*, 532 U.S. at 605).

In *Dearmore*, the Fifth Circuit held that a preliminary injunction can confer "prevailing party" status in certain circumstances. *Id.* The plaintiff in *Dearmore* obtained a preliminary injunction enjoining the City of Garland from enforcing various minimum housing standards and inspection procedures that the plaintiff claimed violated the Fourth and Fourteenth Amendments. *Id.* at 519. Immediately after the district court issued the preliminary injunction, the City amended the housing ordinance to address the district court's order, mooting the case. *Id.* at 520. The plaintiff argued that the grant of the preliminary injunction and the City's subsequent amendment of the Ordinance represented a judicially sanctioned material change in the legal relationship between the parties. The *Dearmore* court began by noting that lower courts have differed over whether, in the absence of a final decision on the merits, a preliminary injunction may warrant a fee award. "Without a Supreme Court decision on point, circuit courts considering this issue have announced fact-specific standards that are anything but uniform." *Id.* at 521–22 (citing *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 480 F.3d 734, 740-41 (5th Cir. 2007)). A number of circuits "have determined that a preliminary injunction that merely preserves the status quo temporarily will not confer 'prevailing party' status on a party; instead, the preliminary injunction must (i) reflect a merits-based decision on an issue involved in the

6

case; (ii) constitute substantive, indefeasible relief akin to final relief on the merits because, for example, 'the party's claim [for a] permanent injunction is rendered moot by the impact of the preliminary injunction'; (iii) grant the party concrete and irreversible relief in a merits-based decision that vindicates the party's claim and is not appealed by the opposing party; or (iv) incorporate some combination of these factors." *Id.* at 522 (citations omitted). Other circuits have taken less fact-specific approaches. The Fourth Circuit has expressed skepticism that a preliminary injunction could ever confer prevailing party status because of the necessarily abbreviated nature of the merits inquiry in the preliminary injunction context, while the Ninth Circuit has found that a preliminary injunction generally suffices to confer prevailing party status unless the preliminary injunction was obtained early in the litigation and the plaintiff later loses on the merits and has a judgment entered against him. *Id.* (citations omitted).

The *Dearmore* court articulated a "prevailing party" test for situations in which a plaintiff has obtained a preliminary injunction and the suit is subsequently mooted by the defendant's actions: "the plaintiff (1) must win a preliminary injunction, (2) based upon an unambiguous indication of probable success on the merits of the plaintiff's claims as opposed to a mere balancing of the equities in favor of the plaintiff, (3) that causes the defendant to moot the action, which prevents the plaintiff from obtaining final relief on the merits." *Id.* The court stated that "this test does not signal any disagreement with the approaches adopted by the other circuits, with the exception of the Fourth Circuit." *Id.* at 526 n.4. "[W]hen a

defendant moots an action in response to the district court's preliminary injunction order, the defendant will have generally acceded to the order." *Id.* at 524 n.3.

Courts have found that a temporary restraining order can confer prevailing party status when the temporary restraining order does more than simply preserve the status quo. *See Carbonell v. I.N.S.*, 429 F.3d 894, 899 (9th Cir. 2005) (finding that plaintiff was a prevailing party because the parties voluntarily stipulated to a temporary restraining order issued by the district court staying his deportation); *Envtl. Prot. Info. Ctr v. Pac. Lumber Co.*, 103 Fed. Appx. 627, 629 (9th Cir. 2004) (citation omitted) (finding that "the temporary restraining order and preliminary injunction each reflect a 'judicial imprimatur' of success on the merits, which 'alter[ed] the legal relationship of the parties'"); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1160–61 (9th Cir. 2000) (finding that a temporary restraining order prohibiting public officials from interfering with an exhibition containing non-obscene erotic art was sufficient to confer prevailing party status because the order did not simply preserve the status quo but "allowed the convention and art exhibit to take place," and distinguishing the case from others in which courts have refused to recognize prevailing party status based on temporary restraining orders on the basis that those orders did not change the status quo so as to alter the parties' legal relationship); *Libby v. Ill. High Sch. Ass'n*, 921 F.2d 96, 99 (7th Cir. 1990) ("A plaintiff who obtains provisional relief, such as a TRO, becomes a prevailing party only if that relief was a determination on the merits . . . but not where the grant of provisional relief merely preserves the status quo."); *Norma P. ex rel. Christopher P. v. Marcus*, 915 F.2d 794, 805 (2d Cir. 1990) (noting that "the procurement of a TRO in which the court does

8

not address the merits of the case but simply preserves the status quo to avoid irreparable harm to the plaintiff is not by itself sufficient to give a plaintiff prevailing party status"); *Martin v. Secretary of Army*, 463 F. Supp.2d 287, 291 (N.D.N.Y. 2006) (finding prevailing party status based on TRO blocking petitioner's military deployment while his application for discharge on conscientious objector grounds was pending and on subsequent stipulation entered into between the parties endorsing the terms of the TRO); *American Civil Liberties Union of Fla., Inc. v. Polk County, Fla.*, No. 8:05CV02266, 2006 WL 2147716, at *3 (M.D. Fla. July 28, 2006) (finding that stipulated order requiring a municipality to waive various application requirements for a permit to erect a display in a "free speech zone" on public property during the 2005 Christmas season, including a $500,000 insurance policy requirement, a hold harmless requirement, and a 21-day waiting period, and to approve the plaintiff's permit application provided temporary injunctive relief that conferred prevailing party status because it significantly altered the status quo). Several Fifth Circuit decisions stating that a temporary restraining order did not confer prevailing party status dealt with orders that merely preserved the status quo. *See, e.g.*, *Foreman v. Dallas County, Tex.*, 193 F.3d 314, 323 (5th Cir. 1999); *Hanson v. Miss. Bd. of Nursing*, No. 99-60845, 2000 WL 992214, at *1 (5th Cir. June 21, 2000).

### B.     Analysis

The plaintiffs prevailed with respect to several of their challenges to the 2005 and 2007 parade ordinances, including the arbitration provision and the provisions dealing with non-revenue-generating parades. The plaintiffs obtained a TRO enjoining the City from

9

enforcing several provisions of the 2005 ordinance and requiring the City to issue the plaintiffs a parade permit after it had been denied under the ordinance.

Courts have found that a TRO can confer prevailing party status when it does more than simply preserve the status quo. *See, e.g.*, *Carbonell*, 429 F.3d at 899; *Pacific Lumber Co.*, 103 Fed. Appx. At 629; *LSO, Ltd.*, 205 F.3d at 1160–61; *Valadez-Lopez*, 2007 WL 2070215, at *2, 4; *Martin*, 463 F. Supp. 2d at 291. In this case, the TRO required the City to issue a parade permit to the BHS for 2:00 p.m. on January 15, 2007 and enjoined the City from enforcing or administering provisions in the 2005 ordinance stating that no more than one parade may take place on the same day in downtown Houston, that an arbitrator would pick the group to hold the parade in a given year, and that parade organizers would have to obtain certain kinds and amounts of insurance. (Docket Entry No. 13). The TRO did more than simply preserve the status quo.

In addition, the TRI was preceded by an evidentiary hearing in which both sides called witnesses. (Docket Entry No. 12). Based on this hearing, the court entered findings and conclusions granting in part and denying in part the plaintiffs' application for the TRO. (*Id.*). The nature and scope of the hearing held before issuing the TRO was similar to hearings held on preliminary injunction applications. *See* 11A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2951 at 254–55 (2d ed.1995) ("[I]f there is an adversary hearing or the order is entered for an indeterminate length of time, the 'temporary restraining order' may be treated as a preliminary injunction."); *see also Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 426 (5th Cir. 1981).

10

The substance of the TRO in this case and the basis on which it was issued make it appropriate to apply the *Dearmore* framework to determine prevailing party status. The TRO was issued based on the finding that the plaintiffs had "a substantial likelihood of success on the merits of their claims." (Docket Entry No. 13 at 1). In response to the issuance of the TRO, the City revised the ordinance in June 2007, eliminating the arbitration provision and substituting a content-neutral mechanism to resolve competing applications for parade permits. The plaintiffs prevailed on their challenge to the arbitration provision of the parade ordinance under *Dearmore*. The fact that the City subsequently voluntarily amended this provision does not negate the plaintiffs' prevailing party status on this issue. *See Dearmore*, 519 F.3d at 521.

The plaintiffs also obtained a court order finding that aspects of the fee-waiver provision for indigent applicants were unconstitutional and enjoining the application of some of those provisions. *See Walker*, 313 F.3d at 249. This order and injunction also materially altered the legal relationship between the parties. The City subsequently modified these provisions in the 2008 revision to the ordinance. The plaintiffs are also prevailing parties as to their challenge to the indigency fee-waiver provisions.

### III. The Fee Amount

#### A. The Legal Standard

Once the court determines that a plaintiff is entitled to attorneys' fees, it must calculate the appropriate amount. *See Hopwood v. Tex.*, 236 F.3d 256, 277 (5th Cir. 2000), *cert. denied*, 533 U.S. 929 (2001). The calculation of reasonable attorneys' fees is a two-step

process. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates for the participating lawyers. *Id.* District courts should exclude "hours that were not 'reasonably expended'" from this initial fee calculation. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Second, the court considers whether the lodestar should be adjusted upward or downward based on the twelve *Johnson* factors. *Hensley*, 461 U.S. at 434 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). The factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*

"[T]he most critical factor in determining an attorney's fee award is the degree of success obtained." *Hensley*, 461 U.S. at 436. "This factor is particularly crucial when plaintiffs only 'prevail' on some of their claims." *Id.* at 434. When a plaintiff brings "distinctly different claims for relief that are based on different facts and legal theories" in a single suit, "[t]he congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore

12

no fee may be awarded for services on the unsuccessful claim." *Id.* at 435. Courts "should not reduce the lodestar merely because the prevailing party did not receive the type of relief it requested." *See Gates v. Deukmejian*, 987 F.2d 1392, 1404 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at 438 n.14). There is a difference between not succeeding in the relief sought and a plaintiff's failure to succeed in pursuing a particular claim. *See Navarro v. Gen. Nutrition Corp.*, No. C-03-0603SBAEMC, 2004 WL 2648373, at *14 (N.D. Cal. Nov. 19, 2004).

When the plaintiff's claims "involve a common core of facts or [are] based on related legal theories," the "lawsuit cannot be viewed as a series of discrete claims," and the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. However, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.*

There is no precise formula for courts to use in reducing the lodestar amount to reflect a plaintiff's limited success. *See Wright v. Blythe-Nelson*, No. Civ.A.3:99CV2522-D, 2004 WL 2870082, at *8 (N.D. Tex. Dec. 13, 2004) (citing *Hensley*, 461 U.S. at 436). A court should not employ "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon" because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors" and it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested."

*Hensley*, 461 U.S. at 435 n.11. "For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* In *Hensley*, the Court instructed district courts to pay close attention to whether a plaintiff has achieved only partial or limited success in complex civil rights litigation involving numerous challenges to institutional practices or conditions:

> This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved. In this case, for example, the District Court's award of fees based on 2,557 hours worked may have been reasonable in light of the substantial relief obtained. But had respondents prevailed on only one of their six general claims . . . a fee award based on the claimed hours clearly would have been excessive.

*Id.* at 436; *see also Williams v. Kaufman County*, No. Civ.A. 397CV0875L, 2003 WL 21755913, at *9 (N.D. Tex. July 30, 2003) (citing *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991); *Hernandez v. Hill Country Tel. Coop., Inc.*, 849 F.2d 139, 144 (5th Cir. 1988)). Although a district court should not apply a strict proportionality requirement, proportionality is still an "appropriate consideration in the typical case." *See Branch-Hines*, 939 F.2d at 1322.

**B.     Analysis**

The plaintiffs' attorneys' hourly rates ranged from $225 to $265. The hourly rate for legal assistants was $45, and the hourly rate for one law graduate was $90. (Docket Entry No. 52 at 2-3; *Id.*, Ex. B at 3–4). The City does not challenge these hourly rates as unreasonable. Because the rates are not contested, they are considered *prima facie* reasonable. *See Islamic Center of Miss., Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989).

The City argues that some of the hours spent traveling and the associated expenses were unreasonable. (Docket Entry No. 53 at 3). The City cites the time and expenses of attorneys based in Austin traveling round trip from San Francisco to Houston and from Washington, D.C. to Houston, as well as the amount of time spent traveling between Austin and Houston. (*Id.*) It is well established that "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone, are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client."[2] *See Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir.1990). Travel expenses must be reasonable, and what is reasonable is determined by the "sound discretion of the trial judge." *See Associated*

---

[2]The Fifth Circuit has noted that there are cases in which there is a reduction in the award of attorney's fees for travel time in civil rights cases. *See In re Babcock & Wilcox Co.*, No. 06-9964, 2007 WL 854304, at *5 (E.D. La. March 15, 2007) (citing *Watkins v. Fordice,* 7 F.3d 453, 459 (5th Cir. 1993) (holding that court could discount hourly rate for travel time); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.1993) (same))).

*Builders*, 919 F.2d at 380 (citing *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987); *In re Hunt*, 754 F.2d 1290, 1294 (5th Cir. 1985)).

In this case, the plaintiffs do not explain why, given their location in Austin, they are entitled to time and expenses for the trips to San Francisco and Washington, DC. The burden of proof of reasonableness for the fees claimed is on the fee applicant. *See Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir. 1987) (citing *Hensley*, 461 U.S. at 437). This court will not award fees for time spent on travel between Houston and San Francisco and between Houston and Washington, D.C. nor will the court award the expenses associated with these extended trips. (Docket Entry No. 52, Exhibit B-2 at 10, 12, 18).

The billing records submitted by the plaintiffs document the travel time between Houston and Austin and provide reasons for the length of these trips. (Docket Entry No. 52, Exhibit B-2 at 8). Based on the record, the time and expenses for the plaintiffs' attorneys to travel between Houston and Austin are warranted.

The defendants raise objections to entries for time for conversations between plaintiffs' counsel and J. Weisglass, counsel for the Service Employees International Union (SEIU), which filed a separate lawsuit challenging the City's parade ordinance. (Docket Entry No. 53 at 3). In these conversations, the attorneys discussed their respective suits challenging the City's parade ordinance and the possibility of consolidating them. (Docket Entry No. 52, Ex. B-2 at 8, 13). The issues raised in the two suits were similar. The time spent on these conversations is properly included in the lodestar calculation of hours reasonably expended in this litigation.

Based on the billing records the plaintiffs submitted, the hours spent on this suit, excluding certain hours spent traveling, were reasonable. (Docket Entry No. 52, Exhibit B-1). The lodestar is $49,641.50.

The plaintiffs concede that they did not prevail on all of their claims and that their limited success does warrant some reduction in the fee award. (Docket Entry No. 56 at 9). The plaintiffs argue that a 15% reduction is appropriate. (Docket Entry No. 52 at 3). The City argues that the court should reduce the lodestar by 90%, (Docket Entry No. 53 at 3).

The plaintiffs' claims involved a common core of facts and were based on related legal theories. Any reduction must be based on the significance of the overall relief obtained by the plaintiffs, not by accounting for time spent on individual unsuccessful claims.

This suit involved a number of novel and difficult issues. The plaintiffs prevailed in their challenges to two parade ordinance provisions. The plaintiffs obtained a TRO that enjoined the enforcement of the arbitration provision and, under the limited circumstances, to the one-parade-in-downtown-Houston provision, requiring the City to issue a permit for a parade on MLK Day in 2007. As a result of the TRO, the City amended the 2007 ordinance. The plaintiffs also obtained a court order invalidating certain indigency fee-waiver provisions and an injunction against the enforcement of the provision allowing revocation if a non-revenue-generating parade becomes a revenue-generating parade. As a result of the court order, the City again amended the parade ordinance. The plaintiffs raised no constitutional deficiency in the 2008 ordinance.

The plaintiffs did not succeed in many of their challenges to the revised 2007 ordinance, including challenges to the definition of the parade as an impermissible content-based restriction, the application fee, the provision stating that no more than one parade may take place on the same day in downtown Houston, the insurance and indemnification requirements, the $1,000 charge for every intersection above 15 blocks, and, with the exception of the provision allowing revocation if a non-revenue-generating parade becomes a revenue-generating parade, the permit rejection and revocation criteria.  The plaintiffs succeeded in obtaining significant relief, but less than they sought.  The *Johnson* factors counsel in favor of a 25% reduction in the fee award.  *See Atlanta Journal and Constitution v. City of Atlanta Dept. of Aviation*, 442 F.3d 1283, 1290 (11th Cir. 2006) (reducing fee award by 20% when plaintiffs in a First Amendment suit obtained an injunction barring the defendant from forcing publishers to use newsracks bearing advertisements for other products and against vesting unbridled discretion in the person or persons responsible for selecting which publications may be placed in newsracks or which publishers may continue to maintain newsracks at the airport, but did not succeed in permanently enjoining officials from charging licensing fees for the newsracks); *Hopwood*, 236 F.3d at 279 (reducing fee award by 15% when plaintiffs achieved the principal goal of their lawsuit by striking down racial preferences in higher education admissions in Texas, but did not receive any specific injunctive or monetary relief for their own asserted injuries, or gain admission to the University of Texas Law School); *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209–10 (5th Cir. 1998) (reducing fee award from $32,943.97 to $8,340.49

because plaintiff prevailed on only three of nineteen claims, the successful claims were not necessarily the most significant and did not "subsume all others," and the case did not involve novel or difficult issues); *G.R. v. Reg'l Sch. Dist. #15*, No. 3:95CV2173, 1996 WL 762324, at *5-6 (D. Conn. Dec. 16, 1996) (reducing fee award by 25% because plaintiffs did not ultimately prevail in preventing the school system from removing their disabled son from his classroom but were successful on significant issues and achieved many of the benefits and objectives they sought).

## IV. Conclusion

The plaintiffs's motion for attorneys' fees and costs is granted. The plaintiffs are entitled to $37,231.13 in attorneys' fees and $894.88 in costs and expenses.

SIGNED on July 11, 2008, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge